NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

SOLLOG IMMANUEL ADONAI-ADONI,  : Civil Action No. 07-5484(MLC)
            Plaintiff, :
                           :
                           : OPINION
      v.                     :
                           :
CITY OF PHILADELPHIA, et al.,  :
            Defendants. :

**APPEARANCES:**

SOLLOG IMMANUEL ADONAI-ADONI, Plaintiff pro se, # 684439

ARMANDO BRIGANDI, ESQ.
CITY OF PHILADELPHIA LAW DEPARTMENT
1515 Arch Street, 14th Fl., Philadelphia, PA 19103
Counsel for Defendants City of Philadelphia,
PPS-Philadelphia Prison Systems, Leon King, II,
Major Osie Butler, Warden Clyde Gainey, & Lt. P. Howard

ALAN S. GOLD, ESQ.
GOLD & ROBINS
261 Old York Road, Suite 526, Jenkintown, PA 19046
Counsel for Defendants Prison Health Services, and Dr. Caulk

THOMAS P. WAGNER, ESQ. and THOMAS J. MCKENZIE, ESQ.
MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN
1845 Walnut Street, 21st Fl., Philadelphia, PA 19103
Counsel for Defendants, Aramark, Inc., and Joseph Neubauer

**COOPER, District Judge, Sitting by Designation**

    Plaintiff, Sollog Immanuel Adonai-Adoni, an inmate currently confined in Coral Springs, Florida, brings this action in forma pauperis, alleging violations of his constitutional rights under 42 U.S.C. §§ 1983, 1985 and 1986. Indigent status was granted Plaintiff by Order entered on January 7, 2008.

Defendants Aramark, Inc. and Joseph Neubauer, CEO of Aramark, Inc. ("Neubauer") have filed a motion to dismiss (docket entry nos. 26 and 27). These motions are decided without oral argument. See Fed.R.Civ.P. 78(b). The motions will be granted.

**BACKGROUND**

Plaintiff brings this action, pursuant to 42 U.S.C. §§ 1983, 1985 and 1986, against the following defendants: the City of Philadelphia; the PHS-Prison Health Services; Dr. Caulk; PPS-Philadelphia Prison Systems; Leon King, II, PPS Commissioner; Major Osie Butler; Warden Clyde Gainey; Lt. P. Howard; Aramark, Inc.; Neubauer; and Phyllis Taylor, PPS Chaplain. (Compl., Caption and ¶¶ 3-13). The following factual allegations are taken from the Complaint.

The allegations involve incidents and events occurring while Plaintiff was confined within the PPS under the name of John Ennis (PPN # 684439). (Compl., ¶ 3). Plaintiff alleges that, in November 2005, while he was confined at Curran-Fromhold Correctional Facility ("CFCF"), he received a subpoena to testify in federal court on behalf of an inmate, Mickey Miles, in a "religious right issue case." Shortly after he received the subpoena, Plaintiff was transferred to the Philadelphia Industrial Correctional Center ("PICC") within the PPS, allegedly in retaliation by certain defendants for being a witness for inmate Miles. (Compl., ¶¶ 14, 15).

2

Upon his transfer to PICC, Plaintiff alleges that the medications prescribed for his serious chronic illnesses, namely, diabetes, hypertension, vertigo, IBS (irritable bowel syndrome) and arthritis, were cancelled for several weeks by the staff of PHS as directed by defendant, Dr. Caulk. Plaintiff further alleges that the cancellation of his medication caused him unnecessary pain and suffering. (Compl., ¶¶ 16, 17).

Plaintiff also alleges that, after his transfer to PICC, he stopped receiving his kosher meals as directed by defendant, Chaplain Taylor. Plaintiff attaches a letter from defendant, PPS Commissioner King, in response to Plaintiff's earlier requests for kosher meals. The February 2, 2006 letter states that Chaplain Taylor had made a determination that Plaintiff did not meet the requirement of a need for a kosher diet based on sincere religious belief. The letter also states that Plaintiff was hostile and verbally abusive with the Chaplain during their interview, and that Plaintiff has written to the Chaplain in a threatening and abusive manner. (Compl., ¶¶ 21-22, Ex. 1).

Plaintiff contends that he is a "world famous religious figure and considered by thousands of members of the religious movement known as the TOH (Temple of 'Hayah) to be their spiritual leader." Plaintiff also alleges that his religious faith is "perhaps unsurpassed in the history of this planet," and "[h]is 'Prophecies' are world famous for coming to pass." Thus,

3

Plaintiff claims that he holds very serious religious beliefs. (Compl., ¶ 24).

Plaintiff further alleges that the dietary needs of the TOH are found within the Torah, as well as within the Book of the TOH. The TOH has allegedly notified the defendants as to how to properly feed Plaintiff according to his Hebrew beliefs. However, the defendants have refused to provide Plaintiff with a kosher diet. (Compl., ¶¶ 25-26).

Plaintiff is given food daily that is not kosher, is not sealed, or does not contain a kosher seal recognized by any religious committee. Further, food labeled "kosher' is not actually kosher within Plaintiff's belief as a TOH member. Due to not receiving a proper kosher diet, Plaintiff claims to have lost over 50 pounds from starvation. (Compl., ¶¶ 27-29).

Plaintiff also complains that due to the denial of his medication and a kosher diet, he suffered a serious vertigo episode on December 25, 2005, causing him to fall. He suffered a broken wrist and injury to his neck and back from the vertigo fall. Further, because the panic button in Plaintiff's cell did not work, he had no way of notifying the guard on duty about his fall, and he laid on the floor in his cell in great pain for hours until a guard on rounds later noticed Plaintiff's cellmate banging on the door for help. (Compl., ¶¶ 34-42).

4

Plaintiff next alleges that he has been housed in a normal cell with no handicap rails to use in case he has a vertigo episode. He claims that this is a violation of the American with Disabilities Act. (Compl., ¶¶ 43-44).

Plaintiff states that he was treated for his broken wrist at Frankford Hospital, and also spent several days in the cardiac care unit due to "serious elevation in his vital statistics" from denial of his medications for weeks. After he was released from the hospital, Plaintiff started to receive his prescribed medications again, but was denied treatment for his broken wrist and injured back and neck. However, in September 2005, Dr. Caulk again cancelled his prescribed medications for angina pectoris, hypertension and diabetes for prolonged periods of time, making his serious medical conditions even worse. (Compl., ¶¶ 45-48).

Plaintiff contends that Dr. Caulk cancelled his medications in retaliation for Plaintiff filing grievances about Dr. Caulk's unprofessional treatment of him. (Compl., ¶ 49). Plaintiff states that he gave written notice of his complaints and grievances to all of the named defendants. (Compl., ¶¶ 58-63).

Plaintiff also alleges that he has been denied proper dental care for serious dental conditions. In particular, Plaintiff states that he suffered cracked teeth from a beating by prison guards, and defendants have refused him dental treatment for

same. As a result of this denial of dental care, Plaintiff's teeth have rotted and he has abscesses. (Compl., ¶¶ 68-70).

Plaintiff seeks compensatory and punitive damages in excess of $110 million.

On or about January 28, 2008 and February 19, 2008, Plaintiff filed an *ex parte* motion for a temporary restraining order ("TRO") with a memorandum of law in support of his order to show cause. (Docket Entry Nos. 7 and 9). In his declaration in support of the TRO, Plaintiff alleges that named defendant, Lt. P. Howard, is now deceased, and that Plaintiff is in fear of his life and safety because PPS guards and staff have threatened him. The threats occurred after Plaintiff told the PPS guards that Lt. P. Howard would be "terminated by Friday, February 1, 2008." Lt. Howard died on January 30, 2008 from a massive heart attack. Plaintiff alleges that he had a dream or "prophecy" on January 27, 2008, that there would be a new lieutenant on his Pod by Friday, February 1, 2008. The PPS guards have been spreading rumors that Plaintiff used "voodoo" or "black magic" to kill Lt. Howard, and these rumors have resulted in threats on Plaintiff's life.[1] Plaintiff seeks a protective order against numerous PPS

---

[1] Plaintiff also states that the PPS guards have erased Plaintiff's original complaint that was stored on the law library network, and that Plaintiff needs to have daily access to the law library, and a word processor and copier/printer in his cell to proceed with his complaint and other actions filed in district court. He also alleges that defendants have taken religious and legal books that Plaintiff has ordered.

6

guards, restraining them from coming into contact with Plaintiff because they have committed prior abuses against Plaintiff.

Plaintiff also asks that the defendants be compelled to provide him with his medications for his many serious medical conditions, as well as a kosher diet.

On April 22 and 23, 2008, defendants, Aramark, Inc., and Neubauer filed motions to dismiss the Complaint, pursuant to Fed.R.Civ.P. 12(b)(6). (Docket entry nos. 26 and 27). Plaintiff filed an opposition to these motions to dismiss on or about May 8, 2008. (Docket entry no. 31).

## DISCUSSION

### A.   Standard of Review

The Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). On a motion to dismiss, the Court generally must accept as true all of the factual allegations in the complaint, and must draw all reasonable inferences in favor of the plaintiff. Cal. Pub. Employees' Ret. Sys. v. Chubb Corp., 394 F.3d 126, 134 (3d Cir. 2004); Doe v. Delie, 257 F.3d 309, 313 (3d Cir. 2001). But the Court need not credit bald assertions or legal conclusions alleged in the complaint. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997); Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). The plaintiff's "[f]actual allegations must be enough to raise a right to relief

7

above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)". Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007).

The Court, when considering a motion to dismiss, may generally not "consider matters extraneous to the pleadings." In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1426. But if the Court exercises discretion and permits a party to present matters outside the pleadings, the Court must (1) convert the motion to dismiss into one for summary judgment, and (2) allow the parties a reasonable opportunity to present all material pertinent to such a motion under Rule 56. See Fed.R.Civ.P. 12(b). An exception to this general rule is that the Court may consider (1) exhibits attached to the complaint, (2) matters of public record, and (3) all documents that are integral to or explicitly relied upon in the complaint without converting the motion to dismiss into one for summary judgment. Angstadt v. Midd-West Sch. Dis., 377 F.3d 338, 342 (3d Cir. 2004).

B. Section 1983 Actions

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his or her constitutional rights. To state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting

under color of state law. <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988); <u>Piecknick v. Pennsylvania</u>, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

**C.   Defendants Were Not Acting Under Color of State Law**

Private parties may be liable under § 1983 only when they have acted under color of law. <u>Mark v. Borough of Hatboro</u>, 51 F.3d 1137, 1141 (3d Cir. 1995) (quoting <u>Flagg Bros., Inc. v. Brooks</u>, 436 U.S. 149, 156 (1978)). The "under color of state law" requirement of 42 U.S.C. § 1983 has been treated identically to the "state action" requirement of the Fourteenth Amendment. See <u>Mark</u>, 51 F.3d at 1141 (citing <u>United States v. Price</u>, 383 U.S. 787, 794 n.7 (1966); <u>Lugar v. Edmondson Oil Co.</u>, 457 U.S. 922, 928 (1982); <u>Rendell-Baker v. Kohn</u>, 457 U.S. 830, 838 (1982)). State action exists under § 1983 only when it can be said that the government is responsible for the specific conduct of which a plaintiff complains. <u>Mark</u>, 51 F.3d at 1141-42. "Put differently, deciding whether there has been state action requires an inquiry into whether 'there is a sufficiently close nexus between the State and the challenged action of [the defendants] so that the action of the latter may fairly be treated as that of the State itself.'" <u>Id.</u> at 1142 (quoting <u>Blum v. Yaretsky</u>, 457 U.S. 991, 1004 (1982)).

Thus, a private entity can be sued under § 1983 where (1) it has exercised powers that are traditionally the exclusive

9

prerogative of the State, Mark, 51 F.3d at 1142; (2) the State and the private party act in concert or jointly to deprive a plaintiff of his rights, Adickes v. S.H. Kress & Co., 398 U.S. 144, 170-171 (1970); (3) the State has permitted a private party to substitute his judgment for that of the State, Cruz v. Donnelly, 727 F.2d 79, 81-82 (3d Cir. 1984); or (4) the private party and the State have a symbiotic relationship as joint participants in the unconstitutional activity, Edmonson v. Leesville Concrete Co., Inc., 500 U.S. 614, 620 (1991); Mark, 51 F.3d at 1143. See also DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189 (1989) (Fourteenth Amendment's "purpose was to protect the people from the State, not to ensure that the State protected them from each other"); Van Ort v. Estate of Stanewich, 92 F.3d 831, 835 (9th Cir. 1996) ("Individuals . . . have no right to be free from infliction of [constitutional] harm by private actors"); Jones v. Arbor, Inc., 820 F.Supp. 205, 208 (E.D. Pa. 1993) (plaintiff did not allege that defendant corporation was a state actor or had such a symbiotic relationship with the state so as effectively to be an instrumentality of the state).

Plaintiff here does not allege that defendants, Aramark, Inc. and Neubauer are acting under color of state law. Both defendants are private actors, not state officials or governmental entities that would be subject to § 1983 liability. Plaintiff

10

fails to allege any facts to show a contractual relationship between PPS and Aramark, or any kind of nexus between PPS and these defendants as to the provision of Plaintiff's diet. Indeed, Plaintiff alleges no facts of any kind concerning the Aramark defendants' involvement in the provision of Plaintiff's diet. At best, Plaintiff alleges that another lawsuit by another inmate names Aramark as a defendant, but this allegation does not provide any connection to this litigation. Because Plaintiff fails to prove that the Aramark defendants were acting under color of state law, these defendants are not subject to § 1983 liability and will be dismissed from this action accordingly.

This Court also finds that Plaintiff's allegations against the Aramark defendants fail to support a cognizable § 1983 claim because there are no allegations that the Aramark defendants had any personal involvement in the alleged constitutional wrongs. "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted); accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

11

The complaint here alleges that the decision regarding his kosher diet was made by the prison chaplain. Plaintiff does not allege any facts that defendants Aramark and Neubauer had participated or acquiesced in the chaplain's decision, or that these defendants had actual knowledge concerning Plaintiff's diet. In fact, the company hired by PPS to provide food to PPS inmates was not Aramark. Plaintiff admits only that Aramark owns the company. Plaintiff does not identify the company or the persons employed by the company charged with the responsibility of determining whether to provide Plaintiff with a certain diet. Consequently, Plaintiff alleges no facts to sustain his general claim of a constitutional violation by defendants.

This Court finds that Plaintiff fails to state a cognizable § 1983 claim of any constitutional violations by defendants, Aramark and Neubauer. Because these defendants were not acting under color of state law, and had no personal involvement in the decision by PPS and the PPS chaplain to deny Plaintiff a religious kosher diet, the Complaint will be dismissed with prejudice, in its entirety, as against these defendants.

## CONCLUSION

For the reasons set forth above, the motions to dismiss, filed on behalf of defendants, Aramark, Inc. and Joseph Neubauer, CEO of Aramark, Inc., will be granted. Defendants, Aramark, Inc. and Joseph Neubauer, CEO of Aramark, Inc., will be dismissed from this action. The Court will issue an appropriate Order.

s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge
United States District Court
District of New Jersey
Sitting by Designation

Dated: March 31, 2009

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

SOLLOG IMMANUEL ADONAI-ADONI, :
: Civil Action No. 07-5484 (MLC)
       Plaintiff, :
:
    v. : **O R D E R**
:
CITY OF PHILADELPHIA, et al., :
:
       Defendants. :

For the reasons expressed in the Court's Opinion, dated March 31, 2009,,

**IT IS THEREFORE** on this    31st    day of March, 2009,

**ORDERED** that the motions to dismiss the Complaint (docket entry nos. 26 and 27), filed on behalf of Defendants, Aramark, Inc. and Joseph Neubauer, CEO of Aramark, Inc., are **GRANTED**, and that Defendants, Aramark, Inc. and Joseph Neubauer, CEO of Aramark, Inc., are **DISMISSED** from this action.

                                           s/ Mary L. Cooper
                                           **MARY L. COOPER**
                                           United States District Judge
                                           United States District Court
                                           District of New Jersey
                                           Sitting by Designation