NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

SOLLOG IMMANUEL ADONAI-ADONI,  :
                                        : Civil Action No. 07-5484(MLC)
      Plaintiff,        :
                                        :
          v.                 : OPINION
                                        :
CITY OF PHILADELPHIA, et al., :
                                        :
      Defendants.     :

FILED
MAR 31 2009
MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

**APPEARANCES:**

SOLLOG IMMANUEL ADONAI-ADONI, Plaintiff pro se, # 684439
5645 Coral Ridge Drive, #216, Coral Springs, Florida 33076

ARMANDO BRIGANDI, ESQ.
CITY OF PHILADELPHIA LAW DEPARTMENT
1515 Arch Street, 14th Fl., Philadelphia, PA 19103
Counsel for Defendants, City of Philadelphia,
PPS-Philadelphia Prison Systems, Leon King, II,
Major Osie Butler, Warden Clyde Gainey, & Lt. P. Howard

ALAN S. GOLD, ESQ.
GOLD & ROBINS
261 Old York Road, Suite 526, Jenkintown, PA 19046
Counsel for Defendants, PHS-Prison Health Services, and Dr. Caulk

THOMAS P. WAGNER, ESQ. and THOMAS J. MCKENZIE, ESQ.
MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN
1845 Walnut Street, 21st Floor, Philadelphia, PA 19103
Counsel for Defendants, Aramark, Inc., and Joseph Neubauer

**COOPER, District Judge, Sitting by Designation**

     Plaintiff, Sollog Immanuel Adonai-Adoni, a state inmate currently confined in Coral Springs, Florida, brings this action in forma pauperis, alleging violations of his constitutional

rights under 42 U.S.C. §§ 1983, 1985 and 1986. Indigent status was granted Plaintiff by Order entered on January 7, 2008.

Plaintiff has filed several motions seeking a preliminary injunction or temporary restraining order, appointment of a special prosecutor, protective custody from certain Philadelphia Prison Systems ("PPS") officials, and an order allowing Plaintiff daily access to the prison law library and a word processor. (Docket entry nos. 7, 9, 17, and 42). These motions are decided without oral argument pursuant to Fed.R.Civ.P. 78. For the following reasons, the motions will be denied as moot.

## BACKGROUND

Plaintiff filed a civil Complaint, pursuant to 42 U.S.C. §§ 1983, 1985 and 1986, against the following defendants: the City of Philadelphia; the PHS-Prison Health Services; Dr. Caulk; PPS-Philadelphia Prison Systems; Leon King, II, PPS Commissioner; Major Osie Butler; Warden Clyde Gainey; Lt. P. Howard; Aramark, Inc.; Joseph Neubauer, CEO of Aramark; and Phyllis Taylor, PPS Chaplain. (Compl., Caption and ¶¶ 3-13). The following factual allegations are taken from the Complaint.

The allegations of Plaintiff's Complaint involve incidents and events occurring while Plaintiff was confined within the PPS under the name of John Ennis (PPN # 684439). (Compl., ¶ 3). Plaintiff alleges that, in November 2005, while he was confined at Curran-Fromhold Correctional Facility ("CFCF"), he received a

subpoena to testify in federal court on behalf of an inmate, Mickey Miles, in a "religious right issue case." Shortly after he received the subpoena, Plaintiff was transferred to the Philadelphia Industrial Correctional Center ("PICC") within the PPS, allegedly in retaliation by certain defendants for being a witness for inmate Miles. (Compl., ¶¶ 14, 15).

Upon his transfer to PICC, Plaintiff alleges that the medications prescribed for his serious chronic illnesses, namely, diabetes, hypertension, vertigo, IBS (irritable bowel syndrome) and arthritis, were cancelled for several weeks by the staff of PHS as directed by defendant, Dr. Caulk. Plaintiff further alleges that the cancellation of his medication caused him unnecessary pain and suffering. (Compl., ¶¶ 16, 17).

Plaintiff also alleges that, after his transfer to PICC, he stopped receiving his kosher meals as directed by defendant, Chaplain Phyllis Taylor. Plaintiff attaches a letter from defendant, PPS Commissioner King, in response to Plaintiff's earlier requests for kosher meals. The February 2, 2006, letter states that Chaplain Taylor had made a determination that Plaintiff did not meet the requirement of a need for a kosher diet based on sincere religious belief.¹ The letter also states

---

¹ Plaintiff contends that he is a "world famous religious figure and considered by thousands of members of the religious movement known as the TOH (Temple of 'Hayah) to be their spiritual leader." Plaintiff also alleges that his religious faith is "perhaps unsurpassed in the history of this planet," and

3

that Plaintiff was hostile and verbally abusive with the Chaplain during their interview, and that Plaintiff has written to the Chaplain in a threatening and abusive manner. (Compl., ¶¶ 21-22, Exhibit 1).

Plaintiff also complains that due to the denial of his medication and a kosher diet, he suffered a serious vertigo episode on December 25, 2005, causing him to fall. He suffered a broken wrist and injury to his neck and back from the vertigo fall. Further, because the panic button in Plaintiff's cell did not work, he had no way of notifying the guard on duty about his fall, and he laid on the floor in his cell in great pain for hours until a guard on rounds later noticed Plaintiff's cellmate banging on the door for help.² (Compl., ¶¶ 34-42).

---

"[h]is 'Prophecies' are world famous for coming to pass." Thus, Plaintiff claims that he holds very serious religious beliefs. (Compl., ¶ 24). He further alleges that the dietary needs of the TOH are found within the Torah, as well as within the Book of the TOH. The TOH has allegedly notified the defendants as to how to properly feed Plaintiff according to his Hebrew beliefs. However, the defendants have refused to provide Plaintiff with a Kosher diet. (Compl., ¶¶ 25-26).
    Plaintiff is given food daily that is not kosher, is not sealed, or does not contain a kosher seal recognized by any religious committee. Further, food labeled "kosher" is not actually kosher within Plaintiff's belief as a TOH member. As a consequence of not receiving a proper kosher diet, Plaintiff claims to have lost over 50 pounds from starvation. (Compl., ¶¶ 27-29).

    ² Plaintiff next alleges that he has been housed in a normal cell with no handicap rails to use in case he has a vertigo episode. He claims that this is a violation of the American with Disabilities Act. (Compl., ¶¶ 43-44).

4

Plaintiff states that he was treated for his broken wrist at Frankford Hospital, and also spent several days in the cardiac care unit due to "serious elevation in his vital statistics" from denial of his medications for weeks. After he was released from the hospital, Plaintiff started to receive his prescribed medications again, but was denied treatment for his broken wrist and injured back and neck. However, in September 2005, Dr. Caulk again cancelled his prescribed medications for angina pectoris, hypertension and diabetes for prolonged periods of time, making his serious medical conditions even worse. (Compl., ¶¶ 45-48). Plaintiff contends that Dr. Caulk cancelled his medications in retaliation for Plaintiff filing grievances about Dr. Caulk's unprofessional treatment of Plaintiff. (Compl., ¶ 49).

Plaintiff also alleges that he has been denied proper dental care for serious dental conditions. In particular, Plaintiff states that he suffered cracked teeth from a beating by prison guards, and defendants have refused him dental treatment for same. As a result of this denial of dental care, Plaintiff's teeth have rotted and he has abscesses. (Compl., ¶¶ 68-70).

Plaintiff seeks compensatory and punitive damages in excess of $110 million. He also seeks injunctive relief, namely, that he be treated for his injuries and dental needs, and that he be provided with a religious kosher diet.

On or about January 28, 2008, and February 19, 2008, Plaintiff filed an <u>ex parte</u> motion for a temporary restraining

order ("TRO") with a memorandum of law in support of his order to show cause. (Docket Entry Nos. 7 and 9). In his declaration in support of the TRO, Plaintiff alleges that named defendant, Lt. P. Howard, is now deceased, and that Plaintiff is in fear of his life and safety because PPS guards and staff have threatened him. The threats occurred after Plaintiff told the PPS guards that Lt. P. Howard would be "terminated by Friday, February 1, 2008." Lt. Howard died on January 30, 2008 from a massive heart attack. Plaintiff alleges that he had a dream or "prophecy" on January 27, 2008, that there would be a new lieutenant on his Pod by Friday, February 1, 2008. The PPS guards have been spreading rumors that Plaintiff used "voodoo" or "black magic" to kill Lt. Howard, and these rumors have resulted in threats on Plaintiff's life.[3] Plaintiff seeks a protective order against numerous PPS guards, restraining them from coming into contact with Plaintiff because they have committed prior abuses against Plaintiff.

Plaintiff also asks that the defendants be compelled to provide him with his medications for his many serious medical conditions, as well as a kosher diet.

---

[3] Plaintiff also states that the PPS guards have erased Plaintiff's original complaint that was stored on the law library network, and that Plaintiff needs to have daily access to the law library, and a word processor and copier/printer in his cell to proceed with his complaint and other actions filed in district court. He also alleges that defendants have taken religious and legal books that Plaintiff has ordered.

On or about March 21, 2008, Plaintiff filed another motion seeking appointment of a special prosecutor. (Docket entry no. 17). He argues that a special prosecutor is needed to monitor and investigate the alleged abuses by the PPS staff.

Next, on or about July 22, 2008, Plaintiff filed an "emergency" motion (docket entry no. 42) to unseal his first TRO motion (docket entry no. 7), and reiterating his request for appointment of a special prosecutor, a protective order, return of his legal property, and daily access to the prison law library and a word processor.

On January 14, 2009, Plaintiff filed a Notice of Change of Address, (docket entry no. 55), indicating that he has moved to Coral Springs, Florida, and is no longer confined within the PPS.

### DISCUSSION

To secure the extraordinary relief of a preliminary injunction or TRO, plaintiff must demonstrate that "(1) he is likely to succeed on the merits; (2) denial will result in irreparable harm; (3) granting the injunction will not result in irreparable harm to the defendants]; and (4) granting the injunction is in the public interest." Maldonado v. Houston, 157 F.3d 179, 184 (3d Cir. 1998) (as to a preliminary injunction); see Ballas v. Tedesco, 41 F.Supp.2d 531, 537 (D.N.J. 1999) (as to temporary restraining order). A plaintiff must establish that all four factors favor preliminary relief. Opticians Ass'n of

7

Am. v. Independent Opticians of Am., 920 F.2d 187 (3d Cir. 1990). The standards for a permanent injunction are essentially the same as for a preliminary injunction, except that the plaintiff must show actual success on the merits, not a likelihood of success, to obtain a permanent injunction. See Univ. of Tex. v. Camenisch, 451 U.S. 390, 392 (1981).

Plaintiff's requests here for a special prosecutor, a protective order from abuse, shackling, and the taking of his legal papers by PPS officials and staff, and daily access to the prison law library and a word processor, as well as his request for the injunctive relief that he be provided medical and dental care and a religious kosher diet, are now rendered moot because Plaintiff is no longer confined within the PPS.[4] Moreover, Plaintiff is unable to establish all four factors necessary for preliminary injunctive relief as required, because Plaintiff cannot show that he will suffer irreparable harm now he has moved to Florida.

---

[4] The Court also notes that Plaintiff's request to unseal his initial TRO motion (docket entry no. 7) is rendered moot since it has been determined that injunctive relief itself is made moot by Plaintiff's move from the PPS to Florida.

8

## CONCLUSION

Therefore, for the reasons set forth above, Plaintiff's motions for injunctive and other miscellaneous relief related to his protection from PPS staff and use of the law library while confined within the PPS (docket entry nos. 7, 9, 17 and 42), will be denied as moot. The Court will issue an appropriate Order.

                                                s/ Mary L. Cooper
                                           **MARY L. COOPER**
                                           United States District Judge
                                           United States District Court
                                           District of New Jersey
                                           Sitting by Designation

Dated: March 31, 2009

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

SOLLOG IMMANUEL ADONAI-ADONI, :
:   Civil Action No. 07-5484 (MLC)
Plaintiff, :
:
v. :   **ORDER**
:
CITY OF PHILADELPHIA, et al., :
:
Defendants. :
_____:

**FILED**

MAR 3 1 2009

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

For the reasons expressed in the Court's Opinion, dated March 31, 2009;

**IT IS THEREFORE** on this      31st      day of March, 2009,

**ORDERED** that Plaintiff's motions for a preliminary injunction or temporary restraining order, appointment of a special prosecutor, protective custody from certain Philadelphia Prison Systems officials, and an order allowing Plaintiff daily access to the prison law library and a word processor, and other similar miscellaneous injunctive relief, (docket entry nos. 7, 9, 17, and 42), are **DENIED** as moot, because Plaintiff has moved from the Philadelphia Prison Systems and is now living in Coral Springs, Florida.

                            s/ Mary L. Cooper
                         **MARY L. COOPER**
                         United States District Judge
                         United States District Court
                         District of New Jersey
                         Sitting by Designation